UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RONALD G. FRANK, M.D., P.C., Individually and on behalf of a similarly situated class<br><br>              Plaintiffs,<br><br>         v.<br><br>HORIZON HEALTHCARE SERVICES, INC. d/b/a HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY,<br><br>         Defendants. | Civil Action No.<br><br><br>*CLASS ACTION*<br><br>CLASS ACTION COMPLAINT |

Plaintiff, Ronald G. Frank, M.D., P.C, (herein "Frank"), by his attorneys, Nagel Rice, LLP, individually and on behalf of all others similarly situated, states:

I.    PARTIES

1.    Plaintiff Frank is a medical doctor and medical practice whose specialty is urology with its principal place of business located at 1500 Pleasant Valley Way, West Orange, New Jersey.  Dr. Frank is board certified in urology and has been practicing for over 25 years, establishing an impeccable reputation in this community, with both his peers and his patients.

2.    The Defendant, Horizon Healthcare Service, Inc. d/b/a Horizon Blue Cross Blue Shield of New Jersey (hereinafter "Horizon" or "Defendant"), is an insurance company with offices located at

1

3 Penn Plaza East, PP15F, Newark, New Jersey 07105 and is licensed to do business in the State of New Jersey.

II. <u>INTRODUCTION</u>

3. Plaintiff Frank is an out of network ("ONET") provider with respect to Horizon.

4. Many health insurers, including Defendant Horizon, offer health insurance plans that differentiate between coverage for medical treatment from in-network providers who have negotiated discounted rates with the insurer, known as "participating" providers or "Pars," and ONET providers who charge insured consumers their usual, non-discounted rates, known as "non-participating" providers or "Nonpars." Health insurance plans that permit insured individuals, known as "Members," to seek medical care from ONET providers are more expensive than plans that limit Members to care provided by in-network providers – *i.e.*, such healthcare insurance plans require higher premium payments.

5. When visiting a Par, Members are only responsible for copayments, co-insurance and payment for non-covered items, if any, at the time of service. In contrast, Nonpars, like Plaintiff Frank, may collect their full charges directly from patients at the time of service and are not required to accept reduced rates for procedures performed because they do not have a signed contract with a particular managed care entity. Rather than require Members to pay out-of-pocket and in full for medical services rendered,

2

Nonpars, like Plaintiff Frank, may also agree to accept an assignment of benefits, which occurs when a Member authorizes his or her health benefits plan to remit payment directly to the provider for covered services. Managed care entities may refuse to recognize a Member's assignment and still remit payment to the Member. Whether or not the health plan honors the assignment and pays the amount owed for ONET services directly to the Nonpar, the Nonpar is entitled to bill the Member for the amount of the charge that exceeds the amount that the Member's health plan covers.

6.     As a result of assignments of benefits by his patients who are Members of Horizon, Plaintiff Frank is a beneficiary of small employer health benefits plans, large employer health benefits plans and individual plans either fully funded or administered by Defendant Horizon. Through the wrongful and unlawful actions alleged herein, Defendant Horizon has paid less than it was obligated to pay for ONET services to Plaintiff Frank and other Providers. As a result, Plaintiff Frank, and the similarly situation class members have suffered monetary injury.

7. Plaintiff, Frank, and other Class Members allege violations of the Employee Retirement Income Security Act of 1974 ("ERISA") and Defendant Horizon's insurance contracts that are not governed by ERISA. As alleged herein, Plaintiff and other Class Members were and continue to be injured by underpayments made by Defendant Horizon for services provided by Nonpars, like Plaintiff

3

Frank to Members of Defendant Horizon's health benefits plans. Those underpayments are pervasive and result from systematic operating procedures employed by Defendant Horizon affecting thousands of Providers and Provider Groups.

8.   This lawsuit is designed to address three separate techniques that Horizon uses in a deliberate and systematic was to deprive Nonpar Providers from receiving reimbursement at the appropriate level. These techniques, each of which has been employed against Plaintiff Frank and Class Members, include placing a Provider's account in an Audit, engaging in "claw backs", and now, since the enactment of recent legislation, automatically characterizing all patients coming in through the hospital emergency room as being an "inadvertent" out of network patient pursuant to the recently enacted Out-of-network Consumer Protection, Transparency, Cost Containment and Accountability Act, N.J.S.A. 26:2SS-1 to 20 ("ONET Consumer Protect Act").   The end result is that Frank and the Class Members are denied payment for their services, or are placed in a never-ending accounting nightmare, or at best receive no greater than 125% of Medicare as reimbursement after spending months, if not years, submitting and then resubmitting claims, and appealing denials.

9.   Defendant Horizon's underpayment schemes affected, and continues to affect, thousands of Providers and Provider Groups who have been underpaid for ONET services as a result of Defendant

4

Horizon's illegal conduct.

### III.  SUMMARY OF RELIEF SOUGHT IN THIS CLASS ACTION

10.  Plaintiff Frank, and the Class Members in this putative class action, seek reimbursement for their unpaid charges, as well as other appropriate injunctive, declaratory, and equitable relief including (1) the creation of written  parameters detailing the basis for putting a Provider in an audit and a time limit for completion of the audit, (2) elimination of the use of claw backs and providing plaintiff and class members with reimbursement for the administrative time expended in correcting patient billing records after a claw back occurs, (3) precluding Defendant Horizon from misusing the ONET Consumer Protect Act and reimbursing appropriately when the patient is not an inadvertent ONET patient.

### IV.   JURISDICTION AND VANUE

11.  Jurisdiction and Venue are proper in this district under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this district and a substantial number of the claims involving E.R.I.S.A. Section 502(a) and 29 U.S.C. §1132(a).

### V.   STATEMENT OF FACTS

12.  Plaintiff provides medical and surgical services in the specialty field of urological medicine, to patients at non-party Saint Barnabas Medical Center in Livingston, New Jersey.  Included but not limited to Plaintiff's list of patients, are patients who

are insured through Defendant, Horizon Blue Cross and Blue Shield of New Jersey (hereinafter "Horizon").

13. Defendant, an insurance company, offers "Horizon Healthcare" and "Horizon Blue Cross Blue Shield of New Jersey" products and services within certain geographic areas through licenses granted by the Blue Cross and Blue Shield Association to its insureds.  Upon information and belief, the majority of the claims at issue arise under self-funded employee welfare benefit plans or fully insured plans offered by employers insured by Defendants.  Some of the claims involve individual insurance policies obtained by patients of the Plaintiff with the Defendant.

14.  Plaintiff provided healthcare services to patients insured by Horizon and, through assignments of benefits, is entitled to reimbursement by Horizon.

15.  Plaintiff became an out-of-network provider with Defendant on or about October of 2004.  The claims which give rise to this lawsuit are claims with procedure dates beginning in or about 2016 and continuing to the present. These claims against the Defendant are for non-payment of claims based upon (a) putting plaintiff in audit status and holding claims in audit without resolution, (b)clawing back payments by Defendant, and more recently, (c) reimbursing plaintiff as though they were in network when his patients are admitted through the emergency room.

Anatomy of a Claim

6

16. After conducting initial intake interviews and before any medical services were rendered, Plaintiff and/or Plaintiff's representative verified that the individual parties were covered under Defendant's health benefit plans and that the services to be rendered were also covered. Defendant represented that the insureds and the medical services to be provided were covered. Plaintiff relied on these representations in providing services to each and every one of the individual patients.

17. Plaintiff and his patients had the explicit understanding that Plaintiff would receive the appropriate compensation/reimbursement for the services provided which were covered under out-of-network benefits claims from Plaintiff's patients/Defendant's insureds. In other words, prior to receiving healthcare services, Plaintiff's patients provided an Assignment of Benefits to the Plaintiff assigning to Plaintiff the patient's respective rights to payment of benefits under the health plans issued by the Defendant. Plaintiff had a reasonable expectation to receive reimbursement from the Defendant based on the usual and customary rate for the same or similar procedure in the geographic area. Alternatively, Plaintiff and his patients had explicit understandings that Plaintiff would file claims with the Defendant for the medical services rendered by Plaintiff demanding reimbursement be given to Plaintiff's patients directly in connection with their individual out-of-network benefits and the

terms of reimbursement under each patient's respective plan. Plaintiff filed claims with the Defendant for the medical services provided to his patients on behalf of the patients/insureds with the understanding that the payments received would be remitted to the Plaintiff and/or that Plaintiff's patients who paid Plaintiff outright for the services would be reimbursed pursuant to the claims filed by Plaintiff for the out-of-network reimbursement under each patient's respective plan.

18.  After services were provided, Plaintiff timely submitted claims to Defendant for payment and billed his usual and customary charges for the services provided in accordance with the American Urological Association billing and coding standards and best billing practices.   Despite their previous verification of coverage and benefits for the healthcare services provided by Plaintiff, Defendant uniformly failed to pay properly submitted claims in accordance with the terms of the employee welfare benefit plan documents or insurance policies (E.R.I.S.A. plan) or the individual insurance policies, but instead paid the plaintiff at a lower reimbursement rate or paid only a small portion of the claim or Defendant denied any reimbursement whatsoever or Defendant put the claims in a perpetual "pre-audit" or "audit" category making repeated requests for Plaintiff to submit documents previously requested and submitted on multiple occasions.   The claims in any stage of purported "audit" were

8

effectively denied in that many remain unresolved to the present date.   In most instances, Plaintiff appealed underpayments or denials of claims.

19.   As to those claims not formally appealed, defendants' unwillingness to adjust the reimbursements render the demands for an adjustment futile.

20.   The claims at issue relate primarily to plans that were either employer self-funded plans or direct insurer plans in which parties contracted directly with Defendant for health benefits ("fully insured plans").   Defendant insured and/or administered the plans.   Defendant was a fiduciary to the patients/insureds under E.R.I.S.A. with respect to the fully insured plans because Defendant made the benefits determinations under those plans. Claims include non-E.R.I.S.A. plans and breaches by the defendant due to non-payment.

21.   Some of the Plaintiff's patients were insured under a self-funded health benefits plan.   A self-funded health benefits plan is an insurance plan in which a plan sponsor (such as an employer) acts as the insurer and makes payments of claims directly through its general assets or through a trust fund established for that purpose.   Most plan sponsors retain the services of insurance companies, such as Defendant herein, to administer their self-funded health benefit plans.   In administering the self-funded plans at issue, Horizon exercised discretionary authority over the

management of the plan, disposition of the plan assets, and the adjudication of claims in a manner that was essentially final in nature.  To that end, Horizon was also a fiduciary to the patients/members under E.R.I.S.A. with respect to the self-funded plans.

22.  Some of the claims such as those involving individual health insurance policies and non-E.R.I.S.A. claims are governed by State law.

**Plaintiff's Experiences with Horizon's Systematic Techniques Employed Against ONET Providers**

23.  Plaintiff Frank has approximately 100 or more patients with claims presenting pending in Defendant's "pre-audit" or "audit" category.  Horizon's intentional conduct concerning the out-of-network claims related to Plaintiff's services, including the continuous use of audits and claw backs, has detrimentally damaged the Urology practice of Plaintiff by and through substantial loss of revenue, loss of patients and increased and burdensome administrative costs necessitated by the bad faith tactics employed by Defendant as to the out-of-network claims submitted.

24.  Horizon engages in a widespread pattern of egregious and discriminatory unfair treatment of Plaintiff, Dr. Frank and similarly situated as out-of-pocket network providers, by engaging

in uncalled for audits and employing the technique of clawing back payments already disbursed.

25. Horizon has systematically and repeatedly arbitrarily, capriciously and without basis used the "claw back" or "set-off" technique to recoup alleged "overpayments" without any basis or explanation whatsoever. Said recoupment is unlawful, is implemented in bad faith and is sought without basis or explanation. As a result of these actions by Defendant, Plaintiff has suffered and continues to suffer damages to his reputation, his medical practice/business as well as lost profits and revenues. In addition, the tactics have caused a severe administrative burden on his practice above and beyond normal and customary practices associated with the administration of a medical practice. When this practice is employed, it is difficult, if not impossible, for Plaintiff to reconcile billing records.

26. Plaintiff has been and continues to be systematically and routinely denied reimbursement for Emergency Room visits of Plaintiffs' patients who have out-of-network benefits with Defendant based upon Horizon's misuse of the ONET Consumer Protection Act.

27. All of the above tactics, among others, constitute a clear and deliberate attempt and pattern of repeated and egregious methods instituted by Defendant to strong arm independent and out-of-network providers such as Plaintiff and

other members of the class in a discriminatory manner in an effort to financially cripple the medical practice of out-of-network providers such as and including the Plaintiff herein.

28. Upon information and belief, the E.R.I.S.A. based claims at issue generally fall within two categories, those that fall within a plan administered by Blue Cross Blue Shield of New Jersey (BCBSNJ), which is a division of Defendant HCSC, and those that Defendant may allege to be administered by Blue Cross Blue Shield entities outside of the State of New Jersey.  The plans administered by Blue Cross Blue Shield entities outside of New Jersey are handled through a national program called "BlueCard".

29. The claims at issue in this case involve patients who were employed by different employers.  Plaintiff does not have access to the individual plans of each patient whose claim(s) are the subject of the within lawsuit and therefore individual provisions of the plans cannot be quoted herein.  Plaintiff will be obtaining these plans through discovery.

30. Plaintiff repeatedly appealed and requested reconsideration of out-of-network payment amounts and lack of payments made on various patient claims.  Plaintiff also requested detailed explanations pertaining to the many "claw backs" or payments taken back by the Defendant from one patient's account and arbitrarily and without explanation applied to another patient's account.  Plaintiff repeatedly informed Defendant's

representatives that claims were not paid or were paid too low. The Defendant failed to adequately explain or reconsider the seemingly arbitrary reimbursement amounts including the lack of any reimbursement whatsoever and/or "claw back" actions between patient accounts.

31. Horizon regularly made representations regarding coverage and benefits that turned out not to be true. In each instance, medical services were provided by the Plaintiff to Plaintiffs patient after Plaintiffs representative verified benefits and confirmed coverage with the Defendant. Plaintiff relied on these representations and after the medical services were rendered, the Plaintiff submitted a claim for reimbursement which was either not paid, underpaid, clawed back or held in Defendant's "audit." The aforementioned was typical for Plaintiff concerning the claims which are the subject of this lawsuit.

32. For example, Plaintiff's representative confirmed the out-of—network benefits of Plaintiff's patient, "IM" Subscriber ID#YHX3HZN67559390 via Navinet on 5/8/18 including confirming that no authorization was needed. Plaintiff's patient had surgery on 5/24/18 which was scheduled as an out-patient surgery. The surgery was billed by Plaintiff at his usual and customary rate of $2,250.00 and the out-of-network benefit reimbursement to Plaintiffs patient was only $256.44. (The Plaintiff was paid

directly for this service by Patient JM and Patient JM is still awaiting reimbursement). The same patient had previously had an office visit with the Plaintiff on 4/4/18 and Plaintiff billed his usual and customary rate of $525.00. Plaintiff (on behalf of his patient and as assignee of benefits for his patient) never received reimbursement for out-of-network benefits in connection with the aforementioned office visit. Instead, Plaintiff's office was instructed to send records which Plaintiff's representative did and then the records were requested a second time on 5/10/18. To date, the claim remains unpaid and Defendant, Horizon has the claim in "audit" with no resolution or out-of-network payment reimbursement being made to date. Plaintiff's patient was also not reimbursed for other dates of service, notes were requested and sent by Plaintiff and the claims still remain in Defendant Horizon's "audit."

33. Horizon repeatedly would take back payments from one of Plaintiff's patients/ Defendant's insured and unilaterally without basis or suitable explanation apply it to another patient insured's account for billings. This resulted in the disruption of the usual customer accounting system in Plaintiffs practice causing chaotic bookkeeping and increased administration costs on a daily basis. For example, Plaintiff's patient, "DC" Subscriber ID # JDJSHZN7310592 began treating with Plaintiff, Dr. Frank in 2016. From 2016 through 2018, Patient DC have eleven (11) different

dates of service with Plaintiff. Plaintiffs representative verified and confirmed patient DC's out-of-network benefits with Defendant Horizon. By way of example and not limitation, a claim was filed for dates of service both in Plaintiffs office and in St. Barnabas Medical Center on 10/24/16 and 10/27/16 in the billed amounts of $350.00 and $8,195.00 respectively. On said dates, medical services were provided by Plaintiff and Plaintiff billed his usual and customary rate. Ultimately, Defendant settled Plaintiff's patient's balance bill and paid $5956.86 to Plaintiff. However, this amount was later "taken back" as a claw back on future claims. Despite confirmation of out-of-network benefits with the Defendant Horizon for Plaintiffs patient, DC and despite that Plaintiff provided medical services and submitted proper claims for the billings associated with eleven (11) dates of service the claims were ultimately not paid by the Defendant. Plaintiff relied on the Defendant's verifications and representations of coverage and expected reimbursement to himself, as the Assignee of Benefits and/or to the Plaintiff patient directly who in turn had a responsibility to pay the Plaintiff.

34. Plaintiff's patient, "AF"'s (Subscriber ID # YHQ3HZN62092980), account remains unpaid to date. On 3/6/18, Patient AF was seen in the Emergency Room and then brought to the operating room for surgery by the Plaintiff. Her out-of-

network benefits were verified by Plaintiff's representative. Plaintiff submitted a bill and filed a claim for $5,065.00 for medical services rendered. Patient AF returned for a follow-up office visit on 3/12/18 at which time, the Defendant insurance company was called again for continuity of care. Patient AF had a stent placed by Plaintiff due her medical condition. Defendant's representatives stated that an authorization was not needed due to the confirmed fact that the patient had out-of-network benefits.  Plaintiff billed for the in-hospital stent placement and subsequent removal which portion was an in-office procedure. Plaintiff received payment for the stent removal procedure only and not either office visit. Thereafter, the Plaintiff received a payment of $4,121.00 which was applied to the $5,065.00 bill minus the emergency room component which was not paid. This is despite a claim being filed for both the Emergency Room visit and the surgery on 3/6/18. Plaintiff filed an Appeal for the emergency room visit claim including the Operative Report as support for the Appeal. While Plaintiff AF's husband was told that the claim would be paid, ultimately the Defendant's representatives rejected Plaintiff Dr. Frank's operative report and clawed back" the entire claim which was the entire $4,121.00 payment previously made. Plaintiff AF's claim associated with the 3/6/18 claims filed are presently in Defendant's "audit.' Therefore, it remains unpaid presently and

16

indefinitely into the future.

35.    Plaintiff's    patient,    "GI'',    Subscriber    ID
YKZ3HZN70740460, began receiving medical services from Plaintiff
Dr. Frank in early 2017. From 2/21/17 up through and including
7/20/2018, Plaintiffs patient GI, had seven (7) surgeries by Dr.
Frank. Prior to rendering any medical treatment, Plaintiffs
representative verified and confirmed with the Defendant that
patient GI had out-of-network benefits for the associated medical
services rendered to her by Plaintiff. Plaintiff subsequently
filed claims and billed his usual and customary charges
associated with each medical service/surgery rendered by
Plaintiff to his patient, GL for a total billed amount for the
seven (7) surgeries of $35,115.00. The Plaintiff initially
received a payment total for all seven (7) surgeries of
$13,862.00 from the Defendant but the Defendant then subsequently
wrongfully clawed back $11,568.00 resulting in Plaintiff
improperly being paid a mere *de minimus* total of $2,294 for seven
*(7)* surgeries on patient GI.

36.    Horizon also engages in the misuse of the ONET Consumer
Protection Act.  For example, Horizon improperly treated a long-
standing patient of Dr. Frank who entered the hospital through the
emergency room as an "inadvertent" out-of-network patient. Patient
D.C., Subscriber ID NJX3HZN73642440 has been a regular patient of
Dr. Frank since September 17, 2001. D.C.'s policy provides him

with out-of-networks benefits and D.C. had provided Dr. Frank with an assignment of benefits. On April 3, 2019, D.C. was seen in the emergency room with a swollen kidney and kidney stones and was taken to the operating room due to a blocked kidney. Plaintiff submitted a claim for $5,785.00 for the services detailing three procedure codes. On April 19, 2019 Horizon paid only $1,170.83 on the claim, indicating that the charge was excessive under the law governing payment of inadvertent and involuntary services billed by out of network providers. Horizon indicated that Dr. Frank had 30 days to negotiate the payment. The notice also provided that Dr. Frank could not balance bill the patient. Plaintiff attempted to utilize the negotiation process but only was offered an additional $325.22 more. Plaintiff then submitted a second level appeal on June 4, 2019 received by Horizon on June 6, 2019. However, on June 25, 2019 Horizon indicated that the final payment of $1,496.05, was made on May 24, 2019 depriving Plaintiff of a right to appeal. The appeal was based upon the fact that D.C. treatment in the emergency room by Dr. Frank was not inadvertent because D.C. knew that he was utilizing his out-of-network benefits by seeking treatment with Dr. Frank, as he had done many times in the past, which Horizon was well aware of.

37. Other nonpar physicians have been treated similarly in submitting claims originating in the emergency room for since the passage of the ONET Consumer Protection Act, and they have also

been subjected to improper audits and claw backs.

VI.  CLASS ALLEGATIONS

A.    Class Definitions

38.   Plaintiff bring this action on his own behalf and on behalf of the following three classes of Providers and Provider Groups (the "Classes") defined as follows:

The Audit Class:

> All Providers and Provider Groups in New Jersey which, at any time during the six-year period prior to the filing of this Complaint (the "Class Period"), were not members of Horizon's physician network and therefore were nonparticipating ("nonpar") or "out of network" providers as to Horizon, and who were deprived of payment of ONET benefits based upon the Provider being placed in a state of audit without any set time limits for the audit, and Horizon refusing to pay the claim during the audit.

The Claw Back Class:

> All Providers and Provider Groups in New Jersey which, at any time during the six-year period prior to the filing of this Complaint (the "Class Period"), were not members of Horizon's physician network and therefore were nonparticipating ("nonpar") or "out of network" providers as to Horizon, and who were deprived of payment of ONET benefits based upon the technique utilized by Horizon known as "claw back", "set-off" or accounts receivable whereby claims or portions of claims which had already been paid were recouped by Horizon by taking back payments previously made on behalf of other Members.

The Inadvertent ONET Class:

> All Providers and Provider Groups in New Jersey which, at any time since the passage of the Onet Consumer Protection Act (the "Class Period"), were not members of Horizon's physician network and

therefore were nonparticipating ("nonpar") or "out of network" providers as to Horizon, and who were deprived of payment of ONET benefits based upon Horizon automatically treating all Members who receive care by way of the emergency room as "inadvertent" out of network patients pursuant to the ONET Consumer Protection Act even when the Member is a long standing patient of the ONET physician, resulting in the payment being made at the in-network rate and depriving the plaintiff and Class Members of the right to balance bill the patieint.

B.  **Common Class Claims, Issues And Defenses**

39.  The following common class claims, issues and defenses pertain to Plaintiffs and Members of the Class:

(a)  Whether Defendant Horizon breached its contractual obligations to pay UCR, as defined in Defendant Horizon's health plan contracts;

(b)  Whether Defendant Horizon failed to adequately advise Class Members and their patients of the methodology by which UCR would be determined;

(c)  Whether Defendant Horizon placed Plaintiff and Class Members in a state of "audit" without setting any time limits for the audit, or advising them of the basis for the audit and then refusing to pay claims for the duration of the audit;

(d)  Whether Defendant Horizon improperly utilized a technique known as "claw back" or accounts receivable whereby claims or portions of claims which have already been paid are recouped by Horizon through payments made on behalf of other Members,

(e )  Whether Horizon is violating state and federal law by treating all Members who receive care by way of the emergency room as "inadvertent"     out  of  network  patients

pursuant to the ONET Consumer Protection Act even when the Member is a are long standing patient of Plaintiff or other Class Members;

(f) Whether ERISA requires each Class member to prove exhaustion or futility;

(g) Whether interest should be added to the payment of unpaid benefits under ERISA or common law;

(h) Whether Defendant Horizon's claims review procedures complied with ERISA;

(i) What is the standard of review applicable to review Defendant Horizon's adverse benefit determinations;

(j) Whether Defendant Horizon violated its fiduciary duties owed to Plaintiff and Class Members when it made its reimbursement decisions based on its Nonpar Pricing Methods or otherwise engaged in the conduct alleged in this Amended Class Action Complaint;

(k) Whether Defendant Horizon's failure to pay interest (a) when claims were not timely paid and (b) when the UCR was increased on appeal, violated ERISA, state statutory or common law.

C.   **The Class Satisfies The Requirements Of Rule 23**

40. The Class Members are so numerous that joinder of all Members is impracticable.  Upon information and belief, Defendant Horizon insures thousands of Subscribers in the State of New Jersey.  These Subscribers retain thousands of ONET Providers and Provider Groups to provide medical services for them.  The precise number of Class Members is within Defendant Horizon's custody and control.   Based  on  reasonable  estimates,  the  numerosity

requirement of Rule 23 is easily satisfied for the Class.

41. Plaintiffs and the Class Members' claims are typical of the claims of the Nonparticipating Providers and Nonparticipating Provider Groups of any large or small employer health plan insured or administered by Defendant Horizon and individual Plan insured of administered by Defendant Horizon because, as a result of the conduct alleged herein, Defendant Horizon has breached its statutory, plan, contractual and fiduciary obligations to Plaintiffs and Members of the Class through and by a uniform pattern or practices as described herein.

42. The requirements for proving a claim for benefits under ERISA will also serve to satisfy proof for a claim for breach of contract, such that Plaintiffs, Frank, is an adequate and appropriate class representatives for the three Classes of Providers and Provider Groups, respectively.

43. Plaintiff will fairly and adequately protect the interests of the Members of the Class, is committed to the vigorous prosecution of this action, have retained counsel competent and experienced in class action litigation and have no interests antagonistic to or in conflict with those of the Class. For these reasons, Plaintiffs is an adequate representatives of the Class.

44. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications which could establish incompatible standards of

conduct for Defendant Horizon.

45. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members of the Class is impracticable.  Further, because the unpaid benefits and damages suffered by individual members of the Class may be relatively small (although significant to each of them), the expense and burden of individual litigation make it impossible for the Class Members individually to redress the harm done to them.  Given the uniform policy and practices at issue, there will also be no difficulty in the management of this litigation as a class action.

46. Defendant Horizon failed to comply with the terms of the health plans of Subscribers who retained Plaintiffs and other Class Members to provide medical services to them by systematically and typically making UCR determinations that have underpaid benefits, (a) placed Plaintiff and Class Members in a state of "audit" without setting any time limits for the audit, or advising them of the basis for the audit and then refusing to pay claims for the duration of the audit, (b) utilized a technique known as "claw back" or accounts receivable whereby claims or portions of claims which have already been paid are recouped by Horizon through payments made on behalf of other Members, and (c) is now treating all Members who receive care by way of the emergency room as "inadvertent"  out of network patients pursuant to the ONET

Consumer Protection Act even when the Member is a are long standing patient of Plaintiff or other Class Members, resulting in payment being made at the in network rate and depriving the plaintiff and Class Member of the right to balance bill.

## VII. <u>CLAIMS FOR RELIEF</u>

## <u>COUNT I.</u>

## <u>CLAIM FOR PLAN BENEFITS UNDER 29 U.S.C. §1132(a)(1)(B)</u>

47. Plaintiff incorporates and re-alleges the allegations set forth above.

48. The plan terms and provisions which Defendant has breached are the out-of-network provider benefit provisions. The out-of-network provider benefit provisions require reimbursement of reasonable and necessary medical expenses provided by out-of-network providers. As assignee of directly insured members and self—funded members under 29 U.S.C. §1132(a)(1)(B), Plaintiff brings this claim to enforce the terms of the various health benefits plans at issue in which the Defendant has made claim determination in an arbitrary fashion, and to obtain appropriate relief under such provision. As referenced in this complaint, Defendant has paid wholly inadequate amounts for reimbursement for services rendered. Such reimbursement was not based on rates as required by the plans, and employed the aforesaid techniques to deprive Providers of rightful payments for services, all in violation of E.R.I.S.A. Under 29 U.S.C. §1132(a), Plaintiff is

entitled to recover benefits due to them and/or the patients from whom he received assignments of benefits, under the terms of the plans between the Plaintiff's patients and the Defendant.

49. Defendant acted as a fiduciary to the beneficiaries, including Plaintiff and/or the Plaintiff's patients who made the assignments of benefits to Plaintiff, because Defendant has exercised and continues to exercise discretion, authority and control in determining whether plan benefits would and will be paid, and/or the amounts of plan benefit that would be paid, to the plan beneficiaries. As a fiduciary under E.R.I.S.A., Defendant subject to liability under §29 U.S.C. §1132(a). In violation of E.R.I.S.A., Defendant failed to make payments of benefits to either Plaintiff, as assignee of benefits or to the Plaintiff's patients directly under the pertinent employee benefit plans, as required under the terms of the plans between the patients and the Defendant.

50. As described herein, upon information and belief, the Defendant, in violation of E.R.I.S.A. and associated requirements and regulations, has not shown that the amount paid on the subject claims was determined pursuant to the respective plan and/or the Defendant uniformly paid inadequate reimbursement not in accord with plan documents.

51. The defendant breached the terms of the plans of such members in whose shoe Plaintiff stands, by making claim

determinations that had the effect of reimbursing less than was required under the plans without valid evidence or information to substantiate such determination and/or in an arbitrary fashion. As a proximate result of the Defendant's wrongful acts, Plaintiff has, as of the present time, been damaged in a minimum amount of $200,422.15. This amount will be amended to include claims not paid or underpaid to date which may be presently pending with Defendant in Defendant's "audit" status or otherwise with no determination mad on potential other present claims by the filing date of the within Amended Complaint.

<u>COUNT II</u>

<u>FAILURE TO PROVIDE FULL AND FAIR REVIEW UNDER E.R.I.S.A</u>

52.   Plaintiff incorporates and re-alleges the allegations set forth above.

53.   Defendant acts as the "plan administrator" within the meaning of such term under E.R.I.S.A. when they insure a group health plan, when it is designated as a plan administrator for such plan, or acts in the role of a plan administrator with the discretion generally given to a plan administrator. As such, Plaintiff is entitled to assert a claim for relied under 29 U.S.C. §1132(a)(3).

54.   Although Defendant is obligated to do so, it failed to provide a "full and fair review" to Plaintiff and/or Plaintiffs patients insured under the health plan and otherwise failed to

26

make necessary disclosures pursuant to 29 U.S.C. §1133 (and its associated regulations). As referenced in this Complaint, it was Plaintiffs' custom and practice to request reconsideration and/or appeal benefit determinations, and to request information concerning plan language from Defendants, to no avail.

55.   Plaintiff was proximately harmed by Defendant Horizon's failure to comply with 29 U.S.C. §1133 and Plaintiff has been damaged to the present time period in the amount of a least $200,422.15.

COUNT III

**BREACH OF CONTRACT PERTAINING TO NON-E.R.I.S.A. CLAIMS**

56.   Plaintiff incorporates and re-alleges the allegations set forth above.

57.   With regard to the claims not governed by the terms of E.R.I.S.A., the conduct of Defendant described herein constitutes a breach of non-E.R.I.S.A. contracts and plans. The patients purchased plans or policies from the Defendant which included out-of-network benefits. Defendant confirmed the existence of out-of-network coverage at the time of insurance verification by Plaintiff. Further, Defendant agreed at time of insurance verification that the patients had coverage for the procedures to be performed under the patients' out-of-network benefit provisions of the patients' plan. Once the procedures were performed by Plaintiff, Defendant breached its obligation

27

to provide out-of-network benefits by either indefinitely denying payment on claims, by putting the claims in "audit" status for extended periods of time and continuing to the present time, clawing back payments of other payments, denying coverage altogether or by reimbursing at rates less than dictated by the language and terms of the plan by claiming the ONET treatment was inadvertent under the ONET Consumer Protection Act. Through the assignment of benefits, this breach damaged Plaintiff. All conditions precedent to Plaintiff's right to recover have occurred. As a proximate result of Defendant's breaches, Plaintiff has been damaged in the amount of the unpaid or underpaid claims.

## COUNT IV

### BREACH OF FIDUCIARY DUTY

58. Plaintiff incorporates and re-alleges the allegations set forth above.

59.  Pursuant to ERISA § 502(a)(3) and 29 U.S.C. § Section 1132(a)(3), Plaintiff, as assignee of the rights of the patients/members, alternatively pleads that Defendant breached its fiduciary duties to the Plaintiff, as assignee of the patients benefits, in connection with the subject E.R.I.S.A. plan claims.

60. Defendant acted as fiduciary to Plaintiff, assignee of the patients, in connection with the group health plans, as such term is used under E.R.I.S.A. In its role as the insurer, plan administrator, claims administrator and/or fiduciary of

28

E.R.I.S.A. group plans, Defendant is a fiduciary.

61. Defendant breached its fiduciary duty to Plaintiff; as assignee, upon information and belief, by making benefit determinations without valid data or evidence to substantiate such determinations and/or doing so in an arbitrary fashion

62. Defendant regularly provided Provider Claims Summaries in connection with benefits determination or payment which contradicted representations made by Defendant at the time of benefits verification and confirmation and on which representations Plaintiff, as assignee, relied.

63. Specifically, Defendant acted as a fiduciary in that it exercised discretion in determining whether plan benefits would be paid, and/or the amounts of plan benefits that would be paid, to Plaintiff as assignee and/or directly to Plaintiffs patients who were insured by the Defendant. The exercise of discretion in such determinations of plan benefits is a clear fiduciary function that must be carried out in accordance with the terms of the plan. It is clear from review of the Defendant's representations and subsequent payments and Provider Claim Summaries which contradict their representations of verification and confirmation of out-of-network benefit coverage that Defendant's claim determinations are arbitrary, without reference to any plan language and motivated to benefit Defendant financially rather that motivated to benefit the patient and

accordingly, Plaintiff, through assignments. These actions constitute a breach of Defendant's fiduciary duty and entitle Plaintiff to equitable relief, including a surcharge being imposed.

64.   By engaging in the conduct described hereinabove, Defendant failed to act with the care and diligence that a reasonably prudent plan administrator would use in conducting a similar enterprise or to act in accordance with the documents governing the plan. A fiduciary is charged with making sure it is acting in accordance with the documents governing the health policy plan. *See,* E.R.I.S.A. §§ 404(a)(1)(B) and (D), 29 §§ 1104(a)(1)(B) and (D).

65.   As a fiduciary of group health plans under E.R.I.S.A., Defendant owed beneficiaries a duty of loyalty, defined as an obligation to make decisions in the interest of beneficiaries, and to avoid self-dealing or financial arrangements that benefit the fiduciary at the expense of beneficiaries. Defendant is prohibited, legally and ethically, from making benefit determinations to maximize its own profits at the expense of its insureds/beneficiaries.

66.   As a direct and proximate cause of Defendant's breaches of E.R.I.S.A., Plaintiff has been and will continue to be damaged and is entitled to equitable relief by way of surcharge.

67.   Alternatively, Defendant breached it's fiduciary to

Plaintiff and Plaintiff's patients for any and all non-E.R.I.S.A. claims under state law.

<u>JURY TRIAL DEMAND</u>

Plaintiff demands a jury trial for all claims so triable.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, Ronald G. Frank, M.D.P.C., and the Classes demand judgment in their favor against Defendant Horizon as follows:

A.    Declaring that Defendant Horizon has breached the terms of the ERISA health plans of Subscribers and plaintiff as assignee, who received medical services from Plaintiff and the Class Members;

B.    Declaring that Defendant Horizon has failed to provide a "full and fair review" to Subscribers with ERISA health plans and the Plaintiff as assignee who received medical services from Plaintiff and Class Members under § 503 of ERISA, 29 U.S.C. § 1133, and awarding them declaratory relief with respect to Defendant Horizon's violation of ERISA;

C.    Declaring that Defendant Horizon violated its fiduciary duties of loyalty and care to Plaintiff as assignee and Class Members who treated Subscribers with ERISA health plans that Defendant Horizon may be removed as a fiduciary;

D.    Awarding the Plaintiff actual damages, compensatory damages and consequential damages, including lost profits;

E.   Awarding Declaratory and Injunctive Relief with respect to audits, claw backs and improperly treating patients as involuntary ONET;

F.   Awarding Plaintiffs and Class Members the costs and disbursements of this action, including reasonable counsel fees, costs and expenses in amounts to be determined by the Court;

G.   Awarding Plaintiffs as assignee and Class Members who treated Subscribers with non-ERISA health plans unpaid benefits for underpayment of UCR and other ONET charges.

H.   Awarding prejudgment interest; and

I.   Granting such other and further relief as is just and proper.

NAGEL RICE, LLP
103 Eisenhower Parkway
Roseland, NJ 07068
(973) 618-0400

By: /s/ **Bruce H. Nagel**
      Bruce H. Nagel, Esq.
      Attorneys for Plaintiff
      And the Class

Dated:  June 4, 2020